# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3861

_____

South Dakota Mining Association,    *
Inc.; Homestake Mining Company, of    *
California; Wharf Resources, a    *
Montana General Partnership; Golden    *
Reward Mining Company Limited    *
Partnership; Naneco Minerals, Inc.;    *
Fred J. Gali; Iwalana I. Gali,    *   Appeal from the United States
   *   District Court for the
    Plaintiffs - Appellees,    *   District of South Dakota.
   *
    v.    *
   *
Lawrence County, a Political    *
Subdivision of the State of South    *
Dakota,    *
   *
    Defendant - Appellee,    *
   *
Jack Cole,    *
   *
    Intervenor - Appellant.    *

_____

Submitted: April 20, 1998
Filed: September 16, 1998

_____

Before McMILLIAN, LOKEN, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Jack Cole appeals the district court's[1] grant of summary judgment in favor of the South Dakota Mining Association, Inc., Homestake Mining Company of California, Wharf Resources, Golden Reward Mining Company, L.P., Naneco Minerals, Inc., Fred J. Gali, and Iwalana I. Gali (collectively, the plaintiffs), and its order permanently enjoining enforcement of a Lawrence County, South Dakota, ordinance prohibiting the issuance of any new or amended permits for surface metal mining within the Spearfish Canyon Area. The district court ruled that the ordinance was preempted by the Federal Mining Act of 1872, 30 U.S.C. §§ 21-26 (1994). See South Dakota Mining Ass'n v. Lawrence County, 977 F. Supp. 1396, 1405-07 (D.S.D. 1997). Cole, who intervened on the side of defendant Lawrence County, argues that the ordinance is not preempted. We affirm.

## I. Background

On November 5, 1996, a 51 percent majority of the voters of Lawrence County, South Dakota, approved an initiated ordinance that amended Lawrence County's zoning laws.[2] The voter-approved ordinance adds the following language to the county's zoning provisions: "No new permits or amendments to existing permits may be issued for surface metal mining extractive industry projects in the Spearfish Canyon Area." The Spearfish Canyon Area defined in the ordinance includes approximately 40,000 acres of Lawrence County, encompassing about 10 percent of the total land area

---

[1]The Honorable Richard H. Battey, Chief Judge, United States District Court for the District of South Dakota.

[2]The Lawrence County Board of County Commissioners did not draft the proposed ordinance. The Commissioners merely placed the proposed ordinance on the ballot pursuant to South Dakota state law after backers obtained the requisite number of signatures in favor of the ordinance. See S.D. Codified Laws § 7-18A-13 (Michie 1993). The ordinance became law when it was approved by a majority of the voters in Lawrence County. See id. § 7-18A-14.

of the county.  Approximately 90 percent of the area is within the Black Hills National Forest and is under the supervision and control of the United States Department of Agriculture's Forest Service, and the United States Department of Interior's Bureau of Land Management.  This public land contains unpatented mining claims or properties which are open to the public for mineral developments.  The remaining 10 percent of the area contains privately owned patented mining claims.  The area is also home to "some of the most beautiful land in the Black Hills." South Dakota Mining Ass'n, 977 F. Supp. at 1398.

The following three paragraphs, containing the undisputed factual background, come from the district court's opinion.

Five mining companies have had active surface mining operations within Lawrence County in the past fifteen years.  Two of the plaintiffs, Wharf Resources (Wharf) and Golden Reward Mining Company, L.P. (Golden), either had or currently have active surface mining operations.  Both Wharf and Golden have patented and unpatented mining claims within the area defined in the ordinance.  Some of Wharf's and Golden's unpatented mineral properties are undergoing active mineral exploration.  Wharf is also conducting active surface mining on some privately owned patented mining claims within the area.

Two members of the South Dakota Mining Association who are not plaintiffs, LAC Minerals (U.S.A.) Inc. (LAC Minerals), and Brohm Mining Corp. (Brohm), also either had, or currently have, surface mining operations.  LAC Minerals owns or controls patented and unpatented mineral properties within the Spearfish Canyon Area as defined in the ordinance. From 1988 to the fall of 1993, LAC Minerals operated the Richmond Hill Mine which was an active gold and silver surface mining operation. The mine was undergoing reclamation activities at the time of this action.  Brohm owns or controls the Gilt Edge Mine, an active gold and silver surface mining operation.

Plaintiff Homestake Mining Company (Homestake) has both patented and unpatented mining claims within the area defined in the ordinance. Plaintiff Naneco Minerals, Inc., (Naneco) holds a state surface mine permit, but has not yet begun mining in the Spearfish Canyon Area. Naneco also owns or controls patented mining claims on privately owned land located within the Area. Plaintiffs Fred and Iwalana Gali own patented mining claims within the area defined as Spearfish Canyon. The Galis lease these mineral rights to mining companies while retaining a royalty.

The record shows that surface metal mining is the only mining method that has been used to mine gold and silver deposits located in the vicinity of the Spearfish Canyon Area in the past 20 years. (J.A. at 151, 158.) Although underground and other types of gold and silver mining are prevalent in parts of South Dakota, the record here discloses that surface metal mining is the only mining method that can actually be used to extract these minerals in the Spearfish Canyon Area. (Id. at 151-52, 158-59.) This is because the gold and silver deposits within the Spearfish Canyon Area are geologically located at the earth's surface. (Id. at 151-52, 159.) The plaintiff mining companies have also made substantial investments of both time and money to explore the area for mineral deposits and to develop plans for mining that conform to federal, state, and local permitting laws.

On February 24, 1997, the plaintiffs filed suit in federal district court against Lawrence County, alleging, among other claims, that federal and state mining laws preempted the county ordinance banning surface metal mining within the Spearfish Canyon Area. The plaintiffs sought a declaratory judgment to this effect and an injunction barring enforcement of the ordinance. On March 24, 1997, the plaintiffs filed a motion for summary judgment on their claim that federal and state mining laws preempted the ordinance. The plaintiffs and the county stipulated that no material facts were in dispute and that discovery was unnecessary pending the district court's resolution of the summary judgment motion.

On April 28, 1997, Jack Cole, a private landowner within the Spearfish Canyon Area, filed a motion to intervene and defend the ordinance. The plaintiffs did not object to Cole intervening, and the district court granted the motion. The court also granted the State of South Dakota and Action for the Environment (Action) leave to file amicus curiae briefs regarding the summary judgment motion. The state filed a brief in support of the plaintiffs' summary judgment motion and Action filed a brief opposing the motion. Cole joined in Action's brief.

Prior to any ruling on the summary judgment motion, the district court ordered the parties to brief the issue of whether the case presented a justiciable controversy. The court noted that even though the case was brought as a declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202, the action must be ripe for a federal court to resolve it. The parties then submitted briefs and affidavits regarding the ripeness issue.

The district court ruled that the action was ripe and that it would therefore decide the case on the merits. See South Dakota Mining Assoc., 977 F. Supp. at 1400. The court granted the plaintiffs' motion for summary judgment, ruling that the Federal Mining Act of 1872, 30 U.S.C. §§ 21-26, preempted the Lawrence County ordinance and ordered a permanent injunction barring enforcement of the ordinance. See id. at 1407. Cole appeals.[3]

## II. Analysis

### A. Ripeness

---

[3]Lawrence County did not appeal the district court's ruling and has filed a brief in this court arguing in support of the district court's order invalidating the ordinance and enjoining its enforcement. Accordingly, Lawrence County is designated as an appellee before this court.

Although not raised by the parties in this appeal, we first analyze whether the present action is ripe for federal court adjudication. We have explained that "[r]ipeness is demonstrated by a showing that a live controversy exists such that the plaintiffs will sustain immediate injury from the operation of the challenged provisions." Employers Ass'n, Inc. v. United Steelworkers, 32 F.3d 1297, 1299 (8th Cir. 1994). This means that "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." Babbit v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979). A plaintiff does not have to "await consummation of threatened injury" before bringing a declaratory judgment action. Id. at 298 (internal quotation omitted). Instead, an action is ripe for adjudication if the plaintiff faces injury that "is certainly impending." Id. (internal quotations omitted).

The plaintiffs here have shown a realistic danger of sustaining an immediate, direct injury as a result of the operation or enforcement of the challenged Lawrence County ordinance. Plaintiffs Homestake, Wharf, Golden, Naneco, and Fred and Iwalana Gali all own patented or unpatented mining claims within the Spearfish Canyon Area as defined in the Lawrence County ordinance. Plaintiff South Dakota Mining Association also has members who own patented or unpatented mining claims within the area. Under the plain text of the Lawrence County ordinance, none of the plaintiffs may be granted a new or amended permit for surface metal mining on any of their mining claims within the Spearfish Canyon Area. Because applying for and being denied a county permit for surface metal mining would be an exercise in futility, we will not require plaintiffs to do so before they may challenge the ordinance. See Sammon v. New Jersey Bd. of Med. Examiners, 66 F.3d 639, 643 (3d Cir. 1995) ("Litigants are not required to make such futile gestures to establish ripeness."). We agree with the district court and conclude that the plaintiffs' preemption claim is ripe.

B. Preemption

-6-

Having determined that the plaintiffs' preemption claim is ripe, we now address Cole's challenge to the district court's order declaring the Lawrence County ordinance preempted by federal law and enjoining its enforcement. Cole argues that the Lawrence County ordinance is not preempted by the Federal Mining Act because the ordinance is a reasonable environmental regulation of mining on federal lands. Specifically, Cole claims that because the ordinance only bans one type of mining, surface metal mining, and does so only within a limited area, the ordinance does not prevent the accomplishment of the purposes and objectives of federal mining law.[4]

"We review the district court's grant of summary judgment de novo, applying the same standards as the district court." Mayard v. Hopwood, 105 F.3d 1226, 1227 (8th Cir.1997). Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the facts and the reasonable inferences to be drawn from them in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Supreme Court has set forth the analysis we must apply to determine if a state law is preempted by federal law:

---

[4]We note that Cole also urges us to remand the case to the district court to allow further discovery regarding the purposes and policies underlying the ordinance. We reject this argument because these purposes and policies are immaterial to the preemption analysis here. See Perez v. Campbell, 402 U.S. 637, 651-52 (1971) (holding that "any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause" regardless of the underlying purpose of its enactors).

State law can be pre-empted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted. If Congress has not entirely displaced state regulation over the matter in question, state law is still pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, <u>or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress</u>.

<u>California Coastal Comm'n v. Granite Rock Co.</u>, 480 U.S. 572, 581 (1987) (emphasis added) (citations and internal quotations omitted); <u>see also</u> U.S. Const. art. VI, cl. 2 (supremacy clause). The same preemption analysis applies when a court is determining if federal law preempts a county ordinance. <u>Hillsborough County v. Automated Med. Labs., Inc.</u>, 471 U.S. 707, 713 (1985).

In this case, we must determine whether the Lawrence County ordinance is preempted because it conflicts with federal law. Specifically, we address whether the ordinance conflicts with the Federal Mining Act because it "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress" embodied in the Act. <u>Granite Rock</u>, 480 U.S. at 581 (internal quotation omitted). Thus, in analyzing whether the ordinance is preempted, we must first determine the purposes and objectives of Congress that are embodied in the Mining Act. Second, we must determine whether the ordinance stands as an obstacle to the accomplishment of these Congressional purposes and objectives.

To determine the purposes and objectives that are embodied in the Mining Act, we first look to the text and structure of statute itself. <u>Peters v. Union Pac. R.R. Co.</u>, 80 F.3d 257, 261 (8th Cir.1996). Congress has codified its declaration of the federal government's policy towards mining:

The Congress declares that it is the continuing policy of the Federal Government in the national interest to foster and encourage private

-8-

enterprise in (1) the development of economically sound and stable domestic mining, minerals, metal and mineral reclamation industries, (2) the orderly and economic development of domestic mineral resources, reserves, and reclamation of metals and minerals to help assure satisfaction of industrial, security and environmental needs, (3) mining, mineral, and metallurgical research, including the use and recycling of scrap to promote the wise and efficient use of our natural and reclaimable mineral resources, and (4) the study and development of methods for the disposal, control, and reclamation of mineral waste products, and the reclamation of mined land, so as to lessen any adverse impact of mineral extraction and processing upon the physical environment that may result from mining or mineral activities.

30 U.S.C. § 21a.

The Mining Act provides for the free and open exploration of public lands for valuable mineral deposits. Specifically, the statute states:

Except as otherwise provided, all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States.

30 U.S.C. § 22. The Supreme Court has stated that the Congressional intent underlying this section is to reward and encourage the discovery of economically valuable minerals located on public lands. United States v. Coleman, 390 U.S. 599, 602 (1968). Congress has further provided that the "locators" of mineral deposits on federal lands under § 22 shall have the exclusive right to extract those minerals if they comply with federal law and state and local laws that do

not conflict with federal law.  <u>See</u> 30 U.S.C. § 26.  The Mining Act establishes a system whereby a prospector can "go out

into the public domain, search for minerals and upon discovery establish a claim to the lands upon which the discovery was made." United States v. Curtis-Nevada Mines, Inc., 611 F.2d 1277, 1281 (9th Cir. 1980).

Thus, as shown in the text and structure of the statute, Congress has set out several purposes and objectives in the Mining Act. These include the encouragement of exploration for and mining of valuable minerals located on federal lands, providing federal regulation of mining to protect the physical environment while allowing the efficient and economical extraction and use of minerals, and allowing state and local regulation of mining so long as such regulation is consistent with federal mining law. Having determined the purposes and objectives of the Mining Act, we next examine the second step of the preemption analysis—whether the Lawrence County ordinance stands as an obstacle to these purposes and objectives.

Both parties cite the Supreme Court's decision in Granite Rock to support their positions, and an examination of the case would aid us in applying the second step of our preemption analysis. In Granite Rock, a mining company brought a "purely facial" challenge to a California state law making it unlawful to mine on federal lands without first obtaining a permit from the state Coastal Commission. 480 U.S. at 580. The mining company claimed that the state permit requirement was preempted by federal mining laws. Because the company had not applied for a permit, and it was unclear what requirements the company would have to meet to obtain a permit, the issue faced by the Supreme Court was relatively narrow: "whether Congress has enacted legislation respecting this federal land that would pre-empt any requirement that [the company] obtain a California Coastal Commission permit." Id. at 581. Significant to this case, the Court stressed that the Coastal Commission did not argue that it had the authority to ban all mining. Id. at 586 ("[T]he Coastal Commission has consistently maintained that it does not seek to prohibit mining of the unpatented claim on national forest land."). Instead, the Coastal

-11-

Commission merely claimed that it could require the company to comply with certain reasonable regulatory requirements designed to protect

the environment prior to obtaining a permit.  Id. at 586-87.  In rejecting the company's argument that the permit requirement was preempted because it was an impermissible land use regulation, the Court first assumed without deciding that state land use regulations, which it defined as laws that "in essence choose[] particular uses for the land," were preempted.  Id. at 587.  Second, the Court held that state environmental regulations, laws that "do[] not mandate particular uses of land but require[] only that, however the land is used, damage to the environment is kept within prescribed limits," would not always be preempted.  Id.  Because the Coastal Commission had identified "a possible set of permit conditions not pre-empted by federal law," conditions which would not prohibit the company from mining on federal land, the Court rejected the company's facial challenge and upheld the state permit law.  Id. at 589.

We initially note that, as in Granite Rock, the plaintiffs in this case bring a facial challenge to a local permit law.  However, unlike Granite Rock, we are not confronted with uncertainty regarding what conditions must be met to obtain a permit for surface metal mining in the Spearfish Canyon area.  The Lawrence County ordinance is a per se ban on all new or amended permits for surface metal mining within the area.  Because the record shows that surface metal mining is the only practical way any of the plaintiffs can actually mine the valuable mineral deposits located on federal land in the area, the ordinance's effect is a de facto ban on mining in the area.  Thus, unlike Granite Rock, we are not faced with a local permit law that sets out reasonable environmental regulations governing mining activities on federal lands.

The ordinance's de facto ban on mining on federal land acts as a clear obstacle to the accomplishment of the Congressional purposes and objectives embodied in the Mining Act.  Congress has encouraged exploration and mining of valuable mineral deposits located on federal land and has granted certain rights to those who discover such minerals.  Federal law also encourages the economical extraction and use of these minerals.  The Lawrence County

-13-

ordinance completely frustrates the accomplishment of these federally encouraged activities. A local government cannot prohibit a lawful

use of the sovereign's land that the superior sovereign itself permits and encourages. To do so offends both the Property Clause and the Supremacy Clause of the federal Constitution. The ordinance is prohibitory, not regulatory, in its fundamental character. The district court correctly ruled that the ordinance was preempted.

Finally, we note that in his reply brief, Cole points out that the Spearfish Canyon Area defined in the ordinance includes privately owned land that is outside the purview of the Federal Mining Act. Cole contends that the district court "erred in failing to separately analyze the ordinance's effect on the privately owned land." (Appellant's Reply Br. at 4.) Because Cole did not raise this argument in his initial brief, he has not preserved this error, and we do not address the claim. See United States v. Darden, 70 F.3d 1507, 1549 n.18 (8th Cir. 1995) ("Appellants generally must raise and brief all issues in their opening brief."), cert. denied, 517 U.S. 1149 (1996).

III. Conclusion

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT